UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR-04-07-PO |
| | ) | |
| WILLIAM R. MCFARLAND, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON APPEAL**

This appeal addresses the question of when a driver is in "actual physical control" of his vehicle.  Acting as an appellate court, this Court concludes there is sufficient evidence that the Defendant was in "actual physical control" of his vehicle to support a conviction of the misdemeanor charge of operating a motor vehicle while under the influence.  This Court further concludes the Defendant was on fair notice his actions could constitute criminal conduct.  This Court, therefore, AFFIRMS the Defendant's conviction.

**I. BACKGROUND**

   **A.  The Facts**

On October 10, 2004, responding to a dispatch, Park Rangers Clayton Pope and Bill Boudreau located a stationary white pick up truck at about 1:40 p.m. in the Compass Harbor parking lot within the town of Bar Harbor inside the boundary of Acadia National Park.  Tr. at 7-8, 20, 23.  As the Rangers approached the truck, they discovered the Defendant, William McFarland, "slumped over into the middle of the vehicle" with the keys in the ignition.  *Id*. at 8.  The pick up's hood was warm.  *Id*. at 8-9.  A third ranger, David Smith, arrived and proceeded to arouse Mr. McFarland.  *Id*. at 9-10.  The Ranger asked his name and requested his identification, vehicle registration, and evidence of insurance.  *Id.* at 26.  Once aroused, however, Mr.

McFarland kept drifting off to sleep and the ranger had to make "several attempts" to awaken him. *Id.*

Mr. McFarland confirmed his name and told Ranger Smith he was just taking a nap. *Id.* at 26-27. Asked where he was, Mr. McFarland repeatedly responded "in Bar Harbor," but he was unable to identify any streets or landmarks. *Id.* at 27. Smelling alcohol on Mr. McFarland's breath, Ranger Smith asked him to step from the vehicle, and after some difficulty, Mr. McFarland exited the vehicle and stumbled. *Id*. at 26-28. Ranger Boudreau assisted Mr. McFarland to the police cruiser where he was allowed to sit on the hood. *Id.* at 11, 28. Mr. McFarland consented to a search of his vehicle which resulted in the discovery of a bag of marijuana, two pipes, and two bottles of alcohol—one half-gallon of vodka with about one ounce left and one 750 milliliter of rum "with just a little bit less than half the bottle left." *Id*. at 11-12, 15. The vodka was in the extended cab of the vehicle and the rum was in a bag on the passenger floor board. *Id*. at 15. Ranger Pope testified the bottles and marijuana were within arms reach of where Mr. McFarland was found in the vehicle. *Id*. at 12, 15. Mr. McFarland also had a scanner in his vehicle that could be used to monitor police and government frequencies. *Id*. at 35-36.

After learning Mr. McFarland had severe arthritis, Ranger Smith administered three sobriety tests that required minimal walking or other movement. *Id*. at 29. Mr. McFarland failed each test. *Id*. at 29-31. On the way to the Bar Harbor Police Department, Mr. McFarland was "glassy-eyed," "couldn't focus real well," and acted like he had to vomit. *Id*. at 19, 31. The parties stipulated to the admission of the results of the intoxilyzer test, which showed that Mr. McFarland had a blood-alcohol level of .31 percent. *Id*. at 41.

**B.  The Charge**

Mr. McFarland was charged in a two-count Information (Docket #1):  Count I alleged on or about October 10, 2004, Mr. McFarland "was knowingly and willfully in actual physical control of a motor vehicle in a park area at Acadia National Park while he had a blood-alcohol level in excess of 0.08% and while he was under the influence of alcohol to a degree that rendered [him] incapable of safe operation of said vehicle" in violation of 36 C.F.R. § 4.23(a); Count II alleged on the same date, Mr. McFarland "knowingly and willfully possessed a controlled substance, approximately ten (10) grams of marijuana, within a park area at Acadia National Park" in violation of 36 C.F.R. § 2.35(b)(2).

**C.  The Verdict**

Pursuant to 18 U.S.C. § 3401, trial was held on November 16, 2004 before Magistrate Judge Margaret Kravchuk.  At the close of the evidence, Mr. McFarland argued the Government had failed to establish he was in "actual physical control" of the vehicle.  Tr. at 44.  He asserted that "actual" does not mean "potential" or "probable" and suggested Maine case law regarding whether a person is "operating" a vehicle is analogous.  *Id*.  The Magistrate Judge rejected this contention:  "[I]f they were similar, it would be operating or attempting to operate.  That isn't the charge. . . .  They use different language."  *Id*.  Defense counsel also argued that § 4.23(a)(1) should be void for vagueness.  *Id*. at 46.

The Magistrate Judge ruled as follows:

> Based on the evidence presented here, and giving due deference to [Defense counsel's] discussion of what actual physical control means, I'm satisfied that the Government has proven beyond a reasonable doubt that Mr. McFarland was in actual physical control of the motor vehicle.  I do think that the fact that the motor vehicle had been relatively recently operated is a fair inference to draw from this evidence based upon the heat from the hood of the vehicle.  I also think that actual physical control as

3

opposed to hypothetical physical control would be something like saying Mr. McFarland was home in his house with the keys and this truck was discovered in this parking lot, and they tried to say he was in actual physical—and he was drunk at his house—that he was in actual physical control of the vehicle, then I might have some doubts that that standard had been met.  But in this case, it's more than hypothetical.  He's sitting behind the wheel of a fairly recently operated motor vehicle, judging by the heat from the hood.   He has the keys, he has access to the registration, he gets it out, he knows where it is, I don't know what else the Government could demonstrate in terms of demonstrating actual physical control and not go a step further to demonstrate intent to operate, which they don't have to demonstrate apparently because it's not attempting to operate, it [is] actual physical control of the motor vehicle, so I'm satisfied they've met that burden and the defendant's guilty of that offense.

*Id*. at 50-51.

### D.   The Appeal

Mr. McFarland raises two issues on appeal:  1) whether he was in "actual physical control" of the vehicle; and, 2) whether he did so "knowingly and willfully."  Def.'s Br. on Appeal to District Ct. (Docket # 26) at 3.  Although found guilty of Count II, possession of marijuana in violation of § 2.35(b)(2), Mr. McFarland has not raised any issues on appeal regarding that conviction.

## II.  STANDARD OF REVIEW

This case is before this Court on appeal from a decision by the United States Magistrate Judge.  18 U.S.C. § 3402; Fed. R. Crim. P. 58(g)(2); *see also United States v. Nachtigal,* 507 U.S. 1 (1993).  In reviewing the Magistrate's conviction, the scope of the appeal "is the same as in an appeal to the court of appeals from a judgment entered by a district judge."  Fed. R. Crim. P. 58(g)(2)(D).  The standard of review from a conviction entered by a Magistrate Judge is well-settled.  Conclusions of law are subject to de novo review, while findings of fact are reviewed only for clear error, "just as would be the case were the matter on appeal from a District Court

bench trial to a Court of Appeals." *United States v. Orme,* 851 F. Supp. 708, 709 (D. Md. 1994), *aff'd,* 51 F.3d 269 (4th Cir. 1995).  Consistent with First Circuit authority, this Court reviews the guilty verdict to determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt." *United States v. Salimonu*, 182 F.3d 63, 74 (1st Cir. 1999)(quoting *Jackson v. Virginia,* 443 U.S. 307, 319 (1979), *reh'g denied*, 444 U.S. 890 (1979)).

## III.  DISCUSSION

### A.  36 C.F.R. § 4.23(a)(1):  "Actual Physical Control"

The Code of Federal Regulations prohibits "[o]perating or being in actual physical control of a motor vehicle" while "[u]nder the influence of alcohol, or a drug, or drugs, or any combination thereof, to a degree that renders the operator incapable of safe operation."  36 C.F.R. § 4.23(a)(1).[1]  The elements of § 4.23(a)(1) are:  (1) Mr. McFarland was operating or in actual physical control of a vehicle; (2) while under the influence of alcohol to a degree of intoxication that rendered him incapable of safe operation; and, (3) within the boundaries National Park Service (NPS) lands.  *See United States v. Atkinson*, No. 04-8093, 2005 WL 834756, at *1 (10th Cir. Apr. 12, 2005);  *see also United States v. Salter,* 28 F.3d 110 (9th Cir. 1994); *United States v. Davis*, 261 F. Supp. 2d 343, 347 (D. Md. 2003).  There is no dispute that the alleged offense occurred within Acadia National Park boundaries on or about October 10, 2004, and there is also no dispute that at the time of Mr. McFarland's arrest, he was intoxicated to a degree that rendered him incapable of safely operating a vehicle.  Mr. McFarland focuses on whether the Government established beyond a reasonable doubt that he was in "actual physical control" of the vehicle at the time he was under the influence.

---

[1] The National Park Service, a service within the Department of the Interior, is statutorily directed to "promote and regulate the use of the Federal areas known as national parks."  16 U.S.C. § 1.

The text of § 4.23(a)(1) is illuminating.  It prohibits not only operation of a motor vehicle while under the influence, but extends to "being in actual physical control" while under the influence.  If "being in actual physical control" is to mean anything, it must refer to something less than actual operation.  The NPS promulgated this regulation in its current form in 1987, and the NPS commentary confirms the language was amended to make certain the regulation applies "whether the vehicle is in motion or not."  *See generally* 52 Fed. Reg. 10670, 10675 (1987).  Under the regulation, the Government is not required to prove Mr. McFarland was actually operating the vehicle, and the fact his vehicle was parked does not by itself make the regulation inapplicable.

Federal case law applying § 4.23(a)(1) is sparse.  In *United States v. Coleman*, 750 F. Supp. 191 (W.D. Va. 1990), the court concluded the defendant was "operating" her automobile pursuant to the regulation in question because she was seated in the driver's seat of her car; her car was on the surface of the roadway; "and most importantly, her key was found in the ignition."  *Id*. at 194.  The court concluded the defendant was not only "operating" the vehicle, but was also "in actual physical control."  *Id*.  The court explained that "operating or being in actual physical control of a motor vehicle . . . draws within its purview conduct more expansive than conduct that would be encompassed within the word 'operating.'"  *Id*.  The court summarized by saying "who could better be described as 'in actual physical control of a motor vehicle' than someone who was the owner, who had her key in the ignition, and who was rhetorically and literally 'in the driver's seat.'"  *Id*.  This summary applies precisely to the facts in Mr. McFarland's case:  he was the owner of the vehicle; he had the key in the ignition; and he was rhetorically and literally in the driver's seat.[2]

---

[2] There is no direct evidence the truck was Mr. McFarland's.  However, the Rangers asked him to produce the registration, and he produced it from the glove compartment.  The parties seem to assume the truck was his.

There are two factual distinctions between *Coleman* and the instant case. First, the defendant in *Coleman* was found parked on "a lonely stretch of the expansive and undeveloped Blue Ridge Parkway," *id.,* while Mr. McFarland was found stationary in a Bar Harbor parking lot. The court in *Coleman* assessed this fact "'in light of human experience'" and concluded the defendant had operated the vehicle in violation of § 4.23. *Id.* (citation omitted). This distinction, however, is not meaningful, because in this case, Magistrate Judge Kravchuk found the hood of the motor vehicle was warm and drew the logical inference it had been "recently operated."[3] Tr. at 50. Magistrate Judge Kravchuk's inference is based on competent evidence.

Second, unlike the defendant in *Coleman*, Mr. McFarland appeared to be asleep. This raises the question that state courts have answered differently: how the law treats a person who chooses to "sleep it off" in a parked vehicle. More specifically, the question is whether that person is in actual physical control within the language of the law.

In general terms, courts have taken one of two approaches.[4] A significant majority of courts has concluded the danger to the public posed by the intoxicated, but sleeping driver, requires he be deemed in actual physical control. Judge Compton of the Supreme Court of Virginia well expressed this view in a dissent: "Ordinary experience tells us that one in a drunken stupor in the driver's seat of a vehicle is likely to arouse abruptly, engage the motive power of the vehicle, and roar away imperiling the lives of innocent citizens." *Stevenson v. City of Falls Church,* 416 S.E.2d 435, 440 (Va. 1992)(Compton, J. dissenting); *accord City of Naperville v. Watson*, 677 N.E.2d 955, 958 (Ill. 1997); *see also State v. Woolf*, 813 P.2d 360, 363 (Idaho Ct. App. 1991)(although defendant pulled off the road, turned out his lights and went

---

[3] Part of "human experience" is that, if the hood of a motor vehicle in Bar Harbor, Maine in early to mid October is warm, the vehicle must have been recently driven.
[4] The state of Maine operating under the influence statute, 29-A M.R.S.A. § 2411, does not use the phrase actual physical control.

to sleep, there remained a chance of injury to the innocent public; he could have awakened, still intoxicated, and driven on); *People v. Davis,* 562 N.E.2d 1152 (Ill. App. Ct. 1990), *appeal denied,* 567 N.E.2d 335, 353-54 (Ill. 1991)(finding by the trial court that defendant was in "actual physical control" of automobile, even though he was asleep in a sleeping bag in the backseat when discovered, was supported by evidence that key was left in ignition, defendant was the sole occupant of the vehicle, the doors were locked, and he had physical capability of starting the engine and moving the vehicle almost instantly); *State v. Johnson,* 15 P.3d 1233, 1240 (N.M. 2000)("We find that the clear purpose of the 'actual physical control' element of the DWI statute is to deter persons from placing themselves in a situation in which they can directly commence operating a vehicle while they are intoxicated, regardless of the location of the vehicle."); *City of Fargo v. Theusch,* 462 N.W.2d 162, 163 (N.D. 1990)(noting that an intoxicated individual who gets into his vehicle to sleep poses a threat of immediate operation of the vehicle at any time while still intoxicated, the court held the trial court did not err in determining that defendant was in "actual physical control" of his vehicle where he was found sleeping in his vehicle which was parked in a restaurant parking lot, the keys were within easy reach, and the officer saw indicia of intoxication when he awakened the defendant); *Hughes v. State*, 535 P.2d 1023, 1024 (Okla. Crim. App. 1975)(sufficient evidence to support the verdict that defendant was in "actual physical control" of vehicle where defendant was asleep behind the wheel and could have at any time started it and driven away); *State v. Kitchens*, 498 N.W.2d 649, 652 (S.D. 1993)(trial court did not error in finding that defendant was in "actual physical control" of his vehicle where defendant was found sleeping behind the steering wheel of his parked vehicle, close to a city street, and with the keys within quick and easy reach in one of his pockets, because defendant could wake up, find the keys in his pocket, and set out on an

inebriated journey at any moment); *State v. Hall*, 353 N.W.2d 37, 42 (S.D. 1984)(evidence sufficient to support verdict that the defendant was in "actual physical control" of the vehicle where he was in the driver's seat, slumped over, and could have sat up and driven off at any time and no one else could have controlled the vehicle unless defendant relinquished his control); *State v. Lawrence,* 849 S.W.2d 761, 765 (Tenn. 1993)(defendant was inside of the vehicle, behind the wheel, had possession of the keys, and was alone in the truck and no one else was in the area; the record is undisputed that, but for his intoxication, he had the present physical ability to direct the vehicle's operation and movement; the defendant could have at any time started the engine and driven away); *State v. Blaine*, 531 A.2d 933, 934 (Vt. 1987)(fact that defendant may have been sleeping or otherwise unconscious does not prevent finding of "actual physical control" of a motor vehicle because he could have regained consciousness and driven away while still under the influence); *Adams v. State*, 697 P.2d 622, 925 (Wyo. 1985)(noting the public policy of the State of Wyoming discourages intoxicated persons from making any attempt to enter a vehicle except as passengers or passive occupants, the court concluded there was sufficient evidence to support the trial court's finding that defendant was in "actual physical control" of his vehicle where the vehicle lights were off, the engine was not running, the ignition key was in an "off" position, and the vehicle was off the road).

A small minority of courts, addressing the same language, refused to extend the "actual physical control" language to someone asleep.  Judge Henderson of the Supreme Court of South Dakota well expressed this view in a dissenting opinion:  "The effect of the majority opinion is to create a new crime:  Parked While Intoxicated." *Petersen v. Dep't of Pub. Safety,* 373 N.W.2d 38, 40 (S.D. 1985)(Henderson, J., dissenting); *see also Stephenson v. City of Fort Smith*, 36 S.W.3d 754, 755 (Ark. Ct. App. 2000)(vehicle owner found by police asleep in the vehicle was

not in "actual control" of the vehicle where he was asleep behind the steering wheel, the vehicle was parked, the lights were off, the motor was not running, and keys were on vehicle's dashboard); *Atkinson v. State*, 627 A.2d 1019, 1021-27 (Md. 1993)(defendant was not in "actual physical control" of the vehicle where he was found slumped over and asleep in the driver's seat, and the vehicle engine was off, but the keys were in the ignition).  Upon review, however, the only case directly on point is *Atkinson,* because in *Stephenson* the keys were on the dashboard. *Cf. Coleman,* 750 F. Supp. at 194 ("[M]ost importantly, her key was found in the ignition.").  For purposes of this case, *Atkinson* stands as the sole authority for Mr. McFarland's claim that in the circumstances as the Magistrate Judge found them, he could not be deemed to have been in "actual physical control" of his vehicle within the meaning of the phrase.  This Court concludes that, depending on the circumstances, the phrase "actual physical control," as used in § 4.23 can extend to a person who is asleep in a parked motor vehicle.

To determine whether the evidence is sufficient to sustain a conclusion of "actual physical control," a "totality of circumstances" test is commonly applied.  *See, e.g., Farley v. City of Montgomery*, 677 So.2d 1251, 1252-53 (Ala. Crim. App. 1995)("Whether one is in 'actual physical control' of a vehicle is determined by a totality-of-the-circumstances test."); *State v. Love*, 897 P.2d 626, 628 (Ariz. 1995)("We find it preferable, as in other cases, to allow the trier of fact to consider the totality of the circumstances in determining whether defendant was in actual physical control of his vehicle."); *People v. Swain,* 959 P.2d 426, 428 (Colo. 1998)("actual physical control" is present when a person exercises bodily influence or direction over a motor vehicle; which is to be decided by a "totality of the circumstances"); *Harris v. Commonwealth*, 709 S.W.2d 846, 847 (Ky. Ct. App. 1986)(the court considers a number of factors in determining whether one was in "actual physical control" of a vehicle, including:  (1)

10

whether or not the person in the driver's seat was asleep or awake; (2) whether or not the vehicle's engine was running; (3) the location of the vehicle and any circumstances showing how the vehicle arrived there; and, (4) the intent of the person behind the wheel); *State v. Lewis,* 722 N.E.2d 147, 150 (Ohio Ct. App. 1999)(each case involving the issue of operation must be decided on its own particular facts); *Commonwealth v. Wolen*, 685 A.2d 1384, 1385-88 (Pa. 1996)(adopting a totality of the circumstances test); *Lawrence*, 849 S.W.2d at 765 (adopting a totality of the circumstances test); *State v. Vialpando*, 89 P.3d 209, 215-16 (Utah Ct. App. 2004)(determination of "actual physical control" must be based on the totality of the circumstances, which references a nonexclusive list of factors that could bear on the determination).

The totality of the evidence in this case supports the Magistrate Judge's finding that Mr. McFarland was in "actual physical control" under the regulation.  Mr. McFarland was the owner of the vehicle; he was positioned behind the wheel; the hood was warm; it was early afternoon; nobody else was in or around the vehicle; and, the keys were in the ignition.  Magistrate Judge Kravchuk drew the permissible inference, based on the warmth of the hood, that the vehicle had recently been driven.  Based on the plethora of case law finding a person in "actual physical control" of a vehicle on facts strikingly similar to the facts here, this Court concludes the Mr. McFarland's conviction was neither clearly erroneous nor contrary to law.

**B.  Constitutionality of 36 C.F.R. § 4.23(a)(1)**

Mr. McFarland contends the phrase "actual physical control" in § 4.23(a)(1) is unconstitutionally vague and ambiguous, and therefore, under the rule on lenity, reversal of conviction is required.  As the Supreme Court has consistently held, the rule of lenity commands that genuine ambiguities affecting a criminal statute's scope be resolved in the defendant's favor.

*See Hughey v. United States,* 495 U.S. 411, 422 (1990); *United States v. Nippon Paper Indus. Co.,* 109 F.3d 1, 7 (1st Cir. 1997), *cert. denied*, 522 U.S. 1044 (1998), *reh'g denied*, 522 U.S. 1143 (1998).  The rule of lenity promotes "fair notice to those subject to the criminal laws," minimizes "the risk of selective or arbitrary enforcement," and maintains "the proper balance between Congress, prosecutors, and courts."  *United States v. Kozminski,* 487 U.S. 931, 952 (1988).  However, the rule only "properly comes into play when, at the end of a thorough inquiry, the meaning of a criminal statute remains obscure."  *United States v. O'Neil,* 11 F.3d 292, 301 n.10 (1st Cir. 1993).

Mr. McFarland cites no case which holds that the phrase "actual physical control" fails to apprise an ordinary person of the conduct proscribed by the statute.  By contrast, a line of cases has rejected vagueness challenges to actual physical control statutes.  *See, e.g., City of Kansas City v. Troutner,* 544 S.W.2d 295, 299-300 (Mo. Ct. App. 1976); *State v. Ruona,* 321 P.2d 615, 618-619 (Mont. 1958); *State v. Schwalk,* 430 N.W.2d 317, 319-21 (N.D. 1988); *Parker v. State,* 424 P.2d 997, 999-1000 (Okla. Crim. App. 1967); *State v. Trucott,* 487 A.2d 149, 152-53 (Vt. 1984); *Adams,* 697 P.2d at 624.  This Court agrees with the reasoning in these cases that the phrase "actual physical control" provides adequate notice of the conduct proscribed and provides the requisite guidance to law enforcement.

## IV.  CONCLUSION

The Judgment of conviction is AFFIRMED.


/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE


Dated this 9th day of May, 2005